IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

MARY CATHERINE LOUISE
MAYVILLE,

    Plaintiff,

      v.

ROSALIE D. GLATKOWSKI, et al.,

    Defendants.

CIVIL ACTION FILE
NO. 1:08-CV-232-TWT

ORDER

    This is a breach of contract action.  It is before the Court on the Defendants'

Motions to Dismiss for Lack of Personal Jurisdiction and Improper Venue [Docs. 22,

23 & 24].  For the reasons stated below, the motions are granted.

## I.  Background

    The Plaintiff, Mary Catherine Louise Mayville ("Mayville"), is a Georgia

resident. None of the individual defendants live in Georgia.  Rosalie D. Glatkowski

is a Florida resident.  Lisa Glatkowski and Jonathan Luke Carruth ("Carruth") are

Tennessee residents.  The Defendants Rosewood, LLC, and Daybreak Developments,

LLC, are limited liability companies formed under Tennessee law.

    In early 2006, Lisa Glatkowski and Carruth decide to purchase 250 acres of

land in Monteagle, Tennessee.  Their plan was to develop the land, build homes, and

sell them.  On February 1, 2006, Lisa Glatkowski contacted Mayville by telephone and urged her to buy one of the Monteagle lots.  (Compl. ¶ 11.)  During the conversation, Lisa Glatkowski described Carruth's experience as a land developer and his capacity to handle the project.

Shortly after this, Carruth and Lisa Glatkowski formed Rosewood, LLC and Daybreak Developments, LLC.  Daybreak was Rosewood's parent company.  Both companies were member managed and had only two members – Carruth and Lisa Glatkowski.  Rose Glatkowski provided Rosewood, LLC with enough money for the company to purchase the undeveloped land.  In return, Rose Glatkowski obtained title to the land.

As part of their sales pitch, Carruth and Lisa Glatkowski made a host of representations to Mayville.  They indicated that the lot would cost $75,000, and that the land would be easy to resell at a profit. (Compl. ¶ 17.)  Even though they knew better, Carruth and Lisa Glatkowski promised that "Phase One" of the land development would be completed within six months from the date of closing.  They also told Mayville, falsely, that there were buyers ready and willing to buy the lots. (Compl. ¶¶ 18-19.)

On February 19, 2006, Lisa Glatkowski emailed Mayville a Property Agreement outlining the transaction between Mayville, Lisa Glatkowski, and Rose

Glatkowski.  The Agreement required Mayville to purchase her lot from Rosewood, LLC.  In exchange, Lisa Glatkowski and Rose Glatkowski promised that the infrastructure development of Phase One would be finished within 180 days from the date that Rosewood received Mayville's money.  (Compl. ¶ 23.)  The Agreement also provided that if, for some reason, the infrastructure was not finished in 180 days, Lisa Glatkowski and Rose Glatkowski would pay down Mayville's mortgage until Phase One was finished.  The Plaintiff contends that Rose Glatkowski and Lisa Glatkowski executed the Agreement, but for some reason, Lisa Glatkowski has refused to deliver the Property Agreement to Mayville.  (Compl. ¶¶ 23-24.)  Mayville obtained the funds for the purchase of the property by obtaining an increase in a home equity line of credit that she had on a condominium located in Gulf Shores, Alabama.

On March 20, 2006, Mayville purchased the Monteagle lot for $73,860.00 (plus $2,603.00 in closing costs).  But Carruth and Lisa Glatkowski falsely told Rose Glatkowski that all of the Monteagle land, not just Mayville's lot, had to be conveyed from Rose Glatkowski to Rosewood, LLC in order to simplify the land sales.  As a result, Rose Glatkowski agreed to convey the rest of the Monteagle land to Rosewood, LLC.  In exchange, Rose Glatkowski would receive her initial investment of $376,000.00, her additional investment of $21,000.00 in costs, and a 20% return on her initial investment.  (Compl. ¶ 33.)

Rosewood, LLC obtained additional funding for the development of the Monteagle land by obtaining a loan secured by an interest in the land.  On April 19, 2006, the company obtained a $190,250.00 line of credit from Tri-County Bank in Tracy City, Tennessee.  Carruth signed all of the loan documents for Rosewood, LLC in his capacity as Chief Manager.  And Lisa Glatkowski knew all about the loan. (Compl. ¶¶ 34-37.)

Since then, neither Rosewood, LLC, Lisa Glatkowski, nor Carruth has taken any major steps towards finishing the land development.  And they never had any intention of finishing it.  (Compl. ¶ 39.)  But that did not stop them from raiding the funds.  Between March and June 2006, Carruth withdrew money from Rosewood, LLC and Daybreak Developments, LLC's bank accounts (which included the closing proceeds that Mayville paid as well as the Tri-County Bank line of credit) for his own personal use.  He bought a Hummer for his father, paid his mother over $35,000, gave over $4,000 to his girlfriend, bought online poker games, a Harley, and a wide screen television. (Compl. ¶ 40.) Lisa Glatkowski converted $8,000.00 to herself from Rosewood, LLC on March 23, 2006, $5,000.00 on April 26, 2006, $5,000.00 on June 3, 2006, $2,000.00 on April 9, 2006, to pay a horse breeder, and $1,250.00 on April 27, 2006, to pay off farm expenses.  (Compl. ¶ 41.)

In November 2006, Mayville emailed Rose Glatkowski, and asked her to begin making the increased condominium mortgage payments as required by the Property Agreement.   Between December 2006 and August 2007, Rose Glatkowski paid Mayville the approximate amount of the increase in Mayville's monthly payments caused by the increase of the home equity line of credit.

Mayville contends that the combination of paying for the Monteagle lot, and the increase in the amount and outstanding balance on the home equity line of credit, left her unable to refinance her first mortgage on the condominium in Alabama.   As a result, Mayville's payments shot up by $498.29 a month.  (Compl. ¶ 44.)

By May 3, 2007, Mayville contacted Rose Glatkowski, and asked her to pay the first mortgage increase for each month in addition to the home equity line of credit increase as was required under the Property Agreement. (Compl. ¶ 45.)  Although Rose Glatkowski paid the first mortgage increase for each month between May and August of 2007, she has refused to pay since August 2007.  Lisa Glatkowski also refuses to pay.  To this date, Mayville's lot is undeveloped and is basically worthless. (Compl. ¶ 49.)  Plus, she has been stuck paying taxes on the lot.  (Compl. ¶ 50.)  The Plaintiff filed this action claiming that the Defendants swindled her.

## II. <u>Motion to Dismiss for Lack of Personal Jurisdiction</u>

"In the context of a motion to dismiss for lack of personal jurisdiction in which no evidentiary hearing is held, the plaintiff bears the burden of establishing a prima facie case of jurisdiction over the movant, nonresident defendant." <u>Morris v. SSE, Inc.</u>, 843 F.2d 489, 492 (11th Cir. 1988). This standard is satisfied "if the plaintiff presents enough evidence to withstand a motion for directed verdict." <u>Madara v. Hall</u>, 916 F.2d 1510, 1514 (11th Cir. 1990). In the Eleventh Circuit, a party presents enough evidence to withstand a motion for directed verdict by putting forth "substantial evidence . . . of such quality and weight that reasonable and fair-minded persons in the exercise of impartial judgment might reach different conclusions . . ." <u>Walker v. NationsBank of Florida</u>, 53 F.3d 1548, 1555 (11th Cir. 1995). Therefore, a plaintiff need not conclusively prove the facts necessary for the assertion of personal jurisdiction. Rather, she must present enough evidence to create a jury question. A court must construe the allegations in the complaint as true so long as the defendant does not dispute the facts. <u>Morris</u>, 843 F.2d at 492. If the plaintiff's complaint and supporting evidence conflict with the defendant's affidavits, however, courts should construe all reasonable inferences in favor of the plaintiff. <u>Madara</u>, 916 F.2d at 1514.

## III.  Discussion

A federal court sitting in diversity is bound by the long-arm statute of the state in which it sits.  <u>Charlie Fowler Evangelistic Ass'n v. Cessna Aircraft Co.</u>, 911 F.2d 1564, 1565 (11th Cir. 1990); <u>Nippon Credit Bank, Ltd. v. Matthews</u>, 291 F.3d 738, 746 (11th Cir. 2002) ("In a diversity action, a federal court has personal jurisdiction over a non-resident defendant to the extent permitted by the forum state's long-arm statute.").  In Georgia, courts are authorized to exercise the broadest scope of personal jurisdiction authorized by the Due Process Clause of the Fourteenth Amendment. <u>Innovative Clinical & Consulting Serv., LLC v. First Nat'l Bank</u>, 279 Ga. 672, 675 (2005) (finding that the statute "grants Georgia courts the unlimited authority to exercise personal jurisdiction over any nonresident who transacts any business in this State," but only to the extent permitted by due process).  In fact, the Georgia Supreme Court's construction of the statute has prompted courts in this District to simply bypass the statutory analysis, and to proceed to the minimum contacts analysis under the Due Process Clause.  <u>See, e.g.</u>, <u>Exter Shipping Ltd. v. Kilakos</u>, 310 F. Supp. 2d 1301, 1312 (N.D. Ga. 2004) (foregoing discussion of long-arm statute where it confers jurisdiction to the maximum extent permitted by federal due process requirements); <u>see also</u> <u>McGow v. McCurry</u>, 412 F.3d 1207, 1214 (11th Cir. 2005) (noting that Eleventh Circuit has interpreted Georgia's long-arm statute, O.C.G.A. § 9-10-91, to

confer personal jurisdiction over non-resident defendants to "the maximum extent permitted by due process") (citing Nippon Credit Bank, Ltd., 291 F.3d at 746).

The Defendants contend that because the Defendants had no physical presence in Georgia, only email and telephone contact, they did not "transact any business" within the meaning of the long-arm statute.  As noted above, this argument is without merit.  See Jimmy Smith Racing Tires, Inc. v. Ashleman, No. 1:05CV0970, 2006 WL 2699127, at *4 (N.D. Ga. Sept. 19, 2006) ("Given that Innovative Clinical dispenses with the requirement that transacting business 'within' Georgia requires physical presence, there is little question that each of the remaining defendants in this lawsuit has conducted at least some business within the state sufficient to satisfy the literal requirements of O.C.G.A. § 9-10-91(1).").   The Plaintiff has alleged that the Defendants, acting in concert, sought her out, contacted her at her Georgia residence, and tricked her into buying land in Tennessee.  Taking the Complaint as true, Carruth, Lisa Glatkowski, Rose Glatkowski, as well as the corporate defendants, all sought to derive economic benefits from a transaction with a Georgia resident, and did so purposely and through the use of telephone contact, email messages, and written correspondence.  See First Nat'l Bank of Ames, Iowa v. Innovative Clinical & Consulting Serv., LLC, 280 Ga. App. 337, 338 (2006), cert. denied, 127 S. Ct. 1910 (2007) ("Although the bank did not have a physical presence in this state, it is

undisputed that the bank had both telephone and written communication with [ICCS] with regard to the Iowa bank accounts. . . . To that end, its postal, telephone, and other intangible Georgia contacts suffice to bring it within the purview of O.C.G.A. § 9-10-91(1)."). The allegations that the Defendants each derived economic benefits from the financial transactions with Mayville is more than enough to meet the requirements of the long-arm statute.

"The Due Process Clause protects an individual's liberty interest in not being subject to the binding judgments of a forum with which he has established no meaningful 'contacts, ties, or relations.'" Burger King Corp. v. Rudzewicz, 471 U.S. 462, 471-72 (1985) (quoting International Shoe Co. v. Washington, 326 U.S. 310, 319 (1945)). Rules regulating the exercise of personal jurisdiction provide a "degree of predictability to the legal system that allows potential defendants to structure their primary conduct with some minimum assurance as to where that conduct will and will not render them liable to suit." World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980).

Federal courts have recognized two kinds of personal jurisdiction that satisfy the Due Process Clause of the Fourteenth Amendment. See Helicopteros Nacionales de Colombia v. Hall, 466 U.S. 408, 415 (1984). Specific jurisdiction exists when: (1) the contacts are related to the cause of action; (2) the defendants purposefully avail

themselves to the benefits of the forum; and (3) the defendants should reasonably anticipate being sued in the forum state. Francosteel Corp. v. M/V Charm, 19 F.3d 624, 627 (11th Cir. 1994). General jurisdiction, on the other hand, exists where a defendant has continuous and systematic contacts with the forum. If a forum has general jurisdiction over a defendant, the forum has personal jurisdiction over any cause of action brought against that defendant, regardless of whether the cause of action arises from the defendant's contacts with the forum. Helicopteros, 466 U.S. at 414; see also Exter Shipping, 310 F. Supp. 2d at 1312.

Before dealing with each of the Defendants individually, it is worth noting that the Plaintiff alleges that the Defendants acted "in concert," and were part of a scheme designed to reach across state lines and swindle her out of her money. Admittedly, "[t]he requirements of International Shoe . . . must be met as to each defendant." Rush v. Savchuk, 444 U.S. 320, 332 (1980). But "the parties' relationships with each other may be significant in evaluating their ties to the forum." Id. As set forth below, each had sufficient ties to the forum to justify the exercise of personal jurisdiction.

This Court has personal jurisdiction over Lisa Glatkowski. She first contacted the Plaintiff in order to induce her to buy the property. See Allegiant Physicians Services, Inc. v. Sturdy Memorial Hospital, 926 F. Supp. 1106, 1114 (N.D. Ga. 1996) (noting that "great weight is placed upon who initiated the transaction because 'parties

who reach out beyond one state and create continuing relationships and obligations with citizens of another state are subject to regulation and sanctions in the other state for the consequences of their activities.'"). The Eleventh Circuit has found jurisdiction proper where a non-resident reaches out and contacts a Georgia plaintiff. See, e.g., Complete Concepts, Ltd. v. General Handbag Corp., 880 F.2d 382, 389 (11th Cir. 1989). The Plaintiff's affidavit also notes that Carruth asked Mayville to help Lisa Glatkowski and Carruth place ads in the *Atlanta Journal-Constitution* about the Monteagle land. (Mayville Aff. ¶ 15.) Furthermore, Lisa Glatkowski provided Mayville with credit card information for the ad. Lisa Glatkowski's multiple calls, emails, and contact with a forum resident, including the long-term relationship created by the Property Agreement, are more than enough to satisfy the requirement for personal jurisdiction.

This Court has personal jurisdiction over Rose Glatkowski. Rose Glatkowski entered into the Property Agreement with Mayville. The Property Agreement created a long-term relationship with a forum resident, obligated Rose Glatkowski to Mayville financially, and resulted in payments made to Mayville's Georgia address. She also called and emailed Mayville in order to finalize the Agreement. Furthermore, Rose Glatkowski contacted Mayville several times with respect to the transaction. She breached the Agreement by failing to inform Mayville that she fraudulently conveyed

her interest in the land, see Mayville Aff. ¶ 47 ("Shortly after March 20, 2006, Defendant Rose conveyed all of her right, title and interest in and to the Monteagle Land to Defendant Rosewood, without receiving any consideration in exchange therefor."), and by failing to make payments due to Mayville.

This Court also has personal jurisdiction over the two corporate defendants. First, the Complaint alleges that the corporations, Rosewood, LLC and Daybreak Developments, LLC, had only two members – Carruth and Lisa Glatkowski.  The Plaintiff alleges that Daybreak and Rosewood were mere extensions of Lisa Glatkowski and Carruth.  Indeed, the allegations are that Lisa Glatkowski and Carruth converted Rosewood's money, some of which was derived from Mayville. Furthermore, the Plaintiff purchased her lot from Rosewood, and alleges that all of the money she sent to the Defendants was deposited in Rosewood and Daybreak's bank accounts.  In addition, the Complaint alleges that Rosewood advertised in the *Atlanta Journal-Constitution*, and that it used Mayville to obtain the ads for the Monteagle property.

Drawing on the Eleventh Circuit's framework for analyzing personal jurisdiction issues, each defendant meets the three parts of the Francosteel test.  First, the causes of action all arise out of the Defendants' contact with the forum, and specifically from their efforts to get money from Mayville.  Each cause of action can

be traced to the Defendants' phone calls, emails, and specific efforts to induce Mayville into buying the Tennessee property, as well as their subsequent failures to abide by the Property Agreement.

Second, the allegations of intentional fraud, especially the conduct of Carruth and Lisa Glatkowski, are more than enough to establish "purposeful availment." Requiring purposeful availment is designed to ensure that defendants will not be sucked into out of state litigation solely on the basis of random, fortuitous, or attenuated contacts. Burger King, 471 U.S. at 475. None of the Defendants' contacts with Mayville and Georgia, can be described as random or incidental. Not only did each Defendant specifically reach out to Mayville in Georgia for the purpose of establishing an ongoing financial relationship with her, but they advertised in Georgia newspapers in order to funnel money out of Georgia and into their land deal. Furthermore, the Complaint alleges that Lisa Glatkowski and Carruth used the corporate defendants for the purpose of executing the land deals. Rose Glatkowski's actions, while different, fall well within the realm of "purposeful availment." She reached out to Mayville several times to make sure that the Property Agreement had been executed, and entered into a Property Agreement that compelled her to make several payments on Mayville's behalf. Rose Glatkowski knew that Mayville lived

in Georgia, and that any breaches of the Agreement would inflict financial harm in Georgia.

Finally, the Defendants argue that the case should be dismissed because venue is inappropriate.  Venue lies in any "judicial district in which a substantial part of the events or omissions giving rise to the claim occurred."  28 U.S.C. § 1391(a)(2); see also Jenkins Brick Co. v. Bremer, 321 F.3d 1366, 1371 (11th Cir. 2003).  Power to exercise jurisdiction over the Defendants does not automatically mean that this is the appropriate venue to hear this action.  Personal jurisdiction analysis requires courts to look to contacts with a forum, and to then determine whether it is fair to assert jurisdiction based on those contacts.  Venue, on the other hand, at least under 28 U.S.C. § 1391(a)(2), looks to whether a "substantial" part of the events giving rise to the claim occurred.

This is a breach of contract action involving the sale of real estate.  The property is located in Tennessee.  The Defendants were in Tennessee when the alleged misrepresentations were made.  The closing of the sale took place in Tennessee.  The money was deposited in a bank in Tennessee.  The alleged misappropriation of the money occurred in Tennessee.  Two of the three individual defendants reside in Tennessee.  The two corporate defendants are Tennessee limited liability companies.  The only real connection to the district is that the Plaintiff resides here.  The Plaintiff

has not met her burden of showing that a substantial part of the events or omissions

giving rise to the claim occurred in this District.  The Motions to Dismiss for improper

venue should be granted.

### IV.  Conclusion

For reasons stated above, the Defendants' Motions to Dismiss for Lack of

Personal Jurisdiction and Improper Venue [Docs. 22, 23 & 24] are GRANTED.

This action is DISMISSED without prejudice.

SO ORDERED, this 8 day of May, 2008.


/s/Thomas W. Thrash
THOMAS W. THRASH, JR.
United States District Judge